RENNER v. PROGRESSIVE LIFE INSURANCE COMPANY.

4-4493

Opinion delivered January 25, 1937.

John W. Nance, for appellant.

E. M. Arnold and Duty & Duty, for appellees.

BUTLER, J. This appeal is from an order of the Benton circuit court striking from the files appellant's amended complaint and the second appeal prosecuted in this action. The first was from a judgment of the trial court sustaining in part a demurrer to the complaint and a motion to dismiss. This court dismissed the appeal for the reason that it was prematurely taken. *Renner* v. *Progressive Life Ins. Co.*, 191 Ark. 836, 88 S. W. (2d) 57. The history of this litigation is stated in that opinion, reference to which is hereby made. The order appealed from, considered by the court in the case, *supra,* recites that the demurrer to plaintiff's complaint was sustained and "that defendant's motion to dismiss the complaint is sustained as to that part of same which seeks to recover balance due on the contract sued upon, and leave is granted to the plaintiff to amend that part of his complaint which seeks recovery for wrongful conversion of the property." Our opinion dismissing appellant's appeal was rendered on December 2, 1935. Within apt time the mandate of this court was filed in the court below and also an amended complaint to which

was attached the contract and escrow agreements which were the basis of the action originally brought.

Summarized, the material allegations may be thus stated: Renner, the appellant, and one, J. F. Catlett, were the owners of the capital stock of the Springfield Life Insurance Company of Springfield, Missouri, a corporation organized and transacting business. as a legal reserve life insurance corporation under the laws of the state of Missouri, maintaining its principal office and place of business in the city of Springfield in that state. The corporation had a paid-up capital stock of $50,000, represented by one thousand shares of which, on the 23d day of May, 1930, appellant Renner was the owner of 504 shares and R. W. Catlett the owner of 496 shares. One hundred and twenty-five shares of appellant's stock were held in escrow by a bank in Springdale, Arkansas, to secure the balance of purchase price of same due the estate of C. G. Dodson, deceased, and one hundred and twenty-five shares were held in escrow by a trust company of Springfield, Missouri, to secure payment of part of the purchase price in the sum of $27,500 due to one Keltner. It was alleged that, on the date above named, the Springfield Life Insurance Company was solvent, having a large amount of insurance contracts in force, with a legal reserve maintained as required by law, to secure which there was on deposit with the Superintendent of Insurance of the state of Missouri securities of the value of $45,000. There was cash on hand in the sum of $50,000 and office equipment and other assets of the fair market value of $10,000, and the shares of the insurance company had a fair market value of $200 per share. It was further alleged that the appellee, Progressive Life Insurance Company, acting by and through J. W. Walker and J. E. Felker, proposed to purchase the capital stock of the Springfield Life Insurance Company owned by Renner and Catlett and promised them that the Springfield Life Insurance Company should be maintained as a going concern in the city of Springfield until the Progressive Life Insurance Company had fully performed its contract for the purchase of the shares

of capital stock; that on said date a contract of sale was entered into between the appellant and Catlett on the one hand and the Progressive Life Insurance Company on the other, whereby it was agreed that the Progressive Life should purchase the capital stock of the Springfield Life owned by Renner and Catlett and that the appellant Renner should be paid $10,000 in cash and the Dodson estate and Keltner the balance of the purchase due by Renner; that in addition, appellant Renner should be paid a certain sum in deferred monthly payments of $2,000 each until fully paid. It was further alleged that article VII of the contract provided that in default of deferred payments the Progressive Life was to forfeit all payments previously made as liquidated damages for breach of contract, and also to forfeit all further rights and benefits thereunder; that contemporaneous with the execution of the contract of sale, an escrow agreement was executed by which the Southern Missouri Trust Company was named as the depository and the shares of stock of the Springfield Life Insurance Company deposited with it, 246 shares being deposited by appellant Renner and 246 by R. W. Catlett. The deferred payments were to be made to the depository for the benefit of Catlett and Renner and upon payment of the entire purchase price the shares were to be delivered by the depository to the Progressive Life Insurance Company. It was further alleged that by the terms of the contract and escrow agreement, if default of deferred payments was made for a period of not less than ninety days the depository was directed to restore to Renner and Catlett their respective shares of stock and that all payments which had been made by the Progressive Life Insurance Company should be retained by Renner and Catlett as liquidated damages.

It was further alleged that after the execution of the contract and the payment of the $10,000 in cash to Renner the Progressive Life Ins. Co. took possession of all of the assets of the Springfield Life Ins. Company, paid certain of the deferred monthly payments due Renner, and a part of the sums due Keltner and Dodson

estate, managed and controlled its property and business affairs, and continued to operate said company as a going concern until November 9, 1931, at which time appellees, for the purpose of defrauding appellant, repudiated the contract to pay appellant the sums due him, balance purchase price of his shares of stock, and without his knowledge or consent converted all of the assets and business of the Springfield Life to their own use, transferred the policy contracts issued by the Springfield Life to the Progressive Life and ceased to carry on the life insurance business of said Springfield Life thereby rendering its shares of stock valueless.

The appellees filed a plea to the amended complaint designated "Motion to strike amended complaint." In that motion a history of the case was recited and the order made by the trial court from which the appeal in *Renner* v. *Progressive Life Ins. Co., supra,* was considered. It was then alleged that after the granting by the court of permission to amend, the plaintiff, by prosecuting an appeal to the Supreme Court, waived his right to amend and that his attempt now to do so—more than eleven months after permission was granted—is unreasonable in that no application for leave to amend has been made and no showing made as to why the amended complaint was not filed within a reasonable time after the term of the court in which permission was granted. It was further alleged that the purported amended complaint contained no new or different facts from those contained in the former complaint. There were other allegations relating to proceedings had prior to the order of the court made March 9, 1935, from which the appeal was taken in the case of *Renner* v. *Progressive Life Insurance Co., supra.* We do not set out these allegations as they have no bearing on the present question.

On March 28, 1936, the court below made the order involved in the present appeal, which is as follows: "On this 28th day of March, 1936, the same being a day of the regular March, 1936, Term of this court, comes on for hearing the motion of the defendants in the above entitled cause to strike the amended complaint of the plain-

tiff herein filed on the 2d day of March, 1936, and after having heard the argument of counsel and the evidence submitted, and, being well and sufficiently advised, the court is of the opinion that said motion should be sustained. It is therefore considered, ordered and adjudged by the court that the motion of the defendants to strike said amended complaint be, and the same is, sustained and said amended complaint is stricken.

To this action of the court the plaintiff excepted and asked permission to file a motion for a new trial, which was granted, and thirty days given to do so. Plaintiff also requested ninety days in which to file a bill of exceptions which was granted by the trial court.''

The appellees filed a motion in this court to dismiss the appeal because of the failure of appellant to comply with the rules of this court in the preparation of its abstract. That motion was passed until the submission of the case upon its merits. It is strenuously argued that the appeal should be dismissed on the ground urged. One of the principal errors argued is that the abstract fails to incorporate the bill of exceptions made in the trial court, and that as the motion was heard upon the evidence, we must presume, in the absence of an abstract, that the evidence was sufficient to justify the conclusion reached. The abstract, however, as first filed is sufficient to show that the evidence adduced on the hearing of the motion to strike consisted of the pleadings and orders of the court made prior to the filing of the amended complaint which were before this court in the case of *Renner* v. *Progressive Life Ins. Co., supra.* It is difficult to perceive what evidence would have been germane to the real question before the court—*i. e.,* did the amended complaint state a cause of action? On the contention made in the motion—that by the prosecution of an appeal to the Supreme Court appellant waived his right granted by the trial court to amend—appellees have cited us to no authority. The appellant doubtless believed that the court erred in sustaining the demurrer to the cause of action based on the contract, and whether he was justified in that opinion, is beside the mark, as he

unquestionably had the right to have that question settled by this court, and, by availing himself of his right of appeal, he did not waive any rights he had to perfect his pleading, should his appeal not have been well taken, and promptly filed his amended complaint after his appeal had been disposed of by this court. Neither is there any merit in the contention made in the motion that the facts pleaded in the amended complaint were contained in appellant's former complaint. The question is, did the complaint, as amended, state a cause of action, and if so, and if the allegations thereof were identical with the former complaint, then the trial court erred in not holding the former complaint sufficient. Although the plea was styled, "A motion to strike," the court should have treated it as a demurrer. The sufficiency of a complaint should not be questioned by motion to strike, but by demurrer. *Hastings* v. *U. S. Fidelity & Guaranty Co.,* 116 Ark. 220, 172 S. W. 1016; *Shamis* v. *Seaman,* 172 Ark. 173, 287 S. W. 1012.

It is suggested in argument that appellant, in his motion for a new trial, did not preserve objection and exception to the action of the court in sustaining appellees' motion to dismiss the amended complaint. Counsel are mistaken. The 10th assignment of error is as follows: "Because the court erred in its judgment in sustaining defendants' motion to dismiss plaintiff's amended complaint." In testing the sufficiency of the complaint the court must look to its allegations only. Any evidence relating to proceedings had in the court prior to its filing would be irrelevant and this court, on appeal, looks to the pleading only in determining its sufficiency.

In support of the trial court's action, it is contended that no cause of action could be stated on the contract because the terms thereof were liquidated by its express provision. This question has passed out of the case because of the abandonment by the appellant of any action on the contract and his election to ground his cause of action upon tort.

It was necessary in the present action to plead so much of the contract as to make the wrong complained of

understandable, and this contract, or any breach thereof, it is claimed by appellees, cannot be made the basis of an action because the contract is void as against public policy, and for that reason, if for no other, the trial court properly sustained the demurrer to the amended complaint. We do not so view the purport and effect of the contract. It is true that in the preamble to the contract, the declaration is made that Renner and his associates were the owners of all the assets of the Springfield Life Insurance Company. None of the assets, however, were sold or attempted to be sold, but the capital stock represented by the certificates owned by Renner and Catlett, and the provision in the contract for the resignation of Renner and Catlett as officers of the Springfield Life was of no consequence since they could have been removed as such by a vote of the majority of the capital stock which had passed to the Progressive Life Company.

We have examined with care the cases cited by appellant on this proposition. The facts in those cases bear no resemblance to the contract in the instant case, and for that reason we do not review them at length.

It is next insisted that the action of the court below was correct because there was a non-joinder of parties plaintiff. It is contended that Catlett was a joint owner of the stock sold to the Progressive Life Ins. Company, and for that reason a full and complete adjudication of the questions involved could only be where both parties were in court. It is true that Renner and Catlett were both interested in the contract, but not jointly. It has been said by the Supreme Court of Missouri in the case of *Welles* v. *Gaty,* 9 Mo. 566, a case cited by appellees, that "a contract may be joint in form and several in fact, or vice versa." But as we view the contract involved, it is several both in form and in fact. Renner owned a certain amount of stock, and sold it to the Progressive Life for a certain amount. Catlett, likewise, owned stock and also sold it. The Progressive Life was responsible to Renner only for the amount of stock purchased from him and he could have had no interest, as

disclosed by the contract, in the liability of the Progressive Life to Catlett.

Certain allegations are made in the amended complaint relating to promises made by appellees prior to the execution of the contract as to the manner in which the Progressive Life Ins. Co. should handle the affairs of the Springfield Life Ins. Co. The appellees contend that appellant invoked these statements as an estoppel against the invocation by appellees of that part of the contract relating to stipulated damages. We do not understand the appellant to make this contention, but if such was made, we agree that an estoppel cannot arise from promise as to future action with respect to right to be acquired upon an agreement not yet made. Besides this, we must look to the written contract only as to the agreement between the parties; and, therefore, the allegations as to promises made relating to future conduct of the Progressive Life Ins. Company should be treated as surplusage. It is not estoppel, however, but fraud upon which appellant relies. It was the assets of the company which gave value to the shares of stock. The fraud alleged to have been committed was the disposition of the assets which resulted in the destruction of their value.

As we view it, the proper and sole question in this case is, did the amended complaint state a cause of action *ex delicto?* Out of the contract pleaded, certain duties arose incident to the status the parties had created, a breach of which would constitute a tort. Cooley on Torts, Vol. 1, 3d Ed., page 159. These duties "do not arise by virtue of any express agreement between the parties, but are duties implied and imposed by law independently of the express terms of the contract, and a breach of such duties * * * will constitute tort." *Logan* v. *Missouri Valley Bridge & Iron Co.,* 157 Ark. 528, 249 S. W. 21. Under the contract, which provided for a return to appellant of his stock in the event the same was not paid for, the law imposed upon appellees the duty to make all reasonable efforts to preserve their value, and any use of the assets of the Springfield Life which came into their possession by reason of the contract in denial or defiance

of the rights of appellant was tortious. If it be true, as alleged, that appellees took possession and disposed of the assets of the Springfield Life with the fraudulent purpose of rendering the certificates valueless, and their act had this effect on them, a cause of action arose which entitled appellant to recover whatever damage he may have sustained by reason of this action on the part of the appellees.

It may be, as argued by learned counsel for appellees, that this lawsuit has no merit, but with this, at present, we have no concern. That will depend upon the proof. We simply pass upon the sufficiency of the complaint to establish an alleged cause of action.

It follows from the views expressed that the trial court erred in sustaining appellees' motion to strike, and for the error indicated the judgment is reversed, and the cause is remanded with directions to treat the motion to strike as a demurrer and to overrule the same, and for such other proceedings as the parties may be advised.

SMITH, J., concurs.

McHANEY, J., dissents.